## UNITED DRUG COMPANY *v.* THEODORE RECTANUS COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 27. Argued March 12, 13, 1918.—Decided December 9, 1918.

A right of trade-mark is not a right in gross; it exists only as appurtenant to an established business and for the protection of the good will thereof. P. 97.

The adoption of a trade-mark does not project the right of protection in advance of the extension of the trade. P. 98.

Where A had a trade-mark in Massachusetts, in connection with a business there and in neighboring States, and B, afterwards, in good faith, without notice of A's use or intent to injure or forestall A, adopted the same mark in Kentucky, where A's business theretofore had not extended, and built up a valuable business under it there, *held*, that A, upon entering B's field with notice of the situation, had no equity to enjoin B as an infringer, but was estopped. P. 103.

226 Fed. Rep. 545, affirmed.

THE case is stated in the opinion.

*Mr. Laurence A. Janney,* with whom *Mr. Alexis C. Angell* and *Mr. Frederick L. Emery* were on the briefs, for petitioner:

When the first user of a trade-mark, reasonably diligent in extending the territory of his trade, ultimately engages, in good faith, in competition with a later user in a common market under the same mark, the first user is entitled to an injunction. Whether the first user has been reasonably diligent is a question of fact in each case. Mrs. Regis did her utmost to promote her business; did no act which amounted to an abandonment of any territory; by federal registration she gave notice of her countrywide claim. If the first user innocently promotes his business, and in the course of a natural growth encounters competition of a later user, he has acted in good faith, particularly if he has been, until the beginning of competition, ignorant of the later user's activities, as in the case at bar. The application of this principle would be nothing more than a recognition of the prior legal title and the prior equity of the first as against a mere subsequent equity of the later user. It would also protect the public against confusion and deception.

In granting the injunction, the District Court accepted the rules laid down in *McLean* v. *Fleming,* 96 U. S. 245; *Menendez* v. *Holt,* 128 U. S. 514; *Saxlehner* v. *Eisner & Mendelson Co.,* 179 U. S. 19; *Saxlehner* v. *Siegel-Cooper Co.,* 179 U. S. 42; and interpreted those decisions as they had been interpreted for many years. The Circuit Court of Appeals attempted to distinguish them on the ground that the defendants had not acted innocently. But this court did not treat that fact as controlling; and the decisions would have been the same if each party had proceeded in ignorance of the other's acts. In the *Siegel-Cooper Case,* defendant's innocence was not held to exonerate it from the charge of infringement nor to relieve it from liability to injunction. See also *Merriam* v. *Smith,* 11 Fed. Rep. 588.

The *McLean Case* presents all the elements of an estoppel, and this court so held in denying an accounting. The complainant knowingly acquiesced in the respondent's use of the mark, and the respondent knowingly relied thereon and made his investment accordingly. He had acted innocently and in good faith. Nevertheless, the court sanctioned complainant's repudiation of acquiescence and did not exonerate the respondent from the charge of infringement. The decision was no doubt influenced largely by the obligation to protect the public. In *Menendez* v. *Holt*, the *McLean Case* was followed. The Court of Appeals erred in holding that Rectanus had a right to assume that he was entitled to continue using the mark because he remained ignorant of any adverse rights. He has no better excuse than had the defendant in the *McLean Case*.

If any estoppel could arise from acquiescence, the intentional acquiescence of complainants in the *McLean* and *Menendez Cases* would create estoppels much more surely than the conduct of Mrs. Regis and her successor in this case. It is the conduct of the party against whom the estoppel is urged which determines the existence of estoppel. The *Saxlehner Cases* sustain the contention that innocence on the part of defendants is not a defense; that their ignorance or knowledge cannot possibly determine the existence of estoppel against the complainant.

See also *Merriam* v. *Smith*, 11 Fed. Rep. 588; *New York Grape Sugar Co.* v. *Buffalo Grape Sugar Co.*, 18 Fed. Rep. 638; *Sawyer Spindle Co.* v. *Taylor*, 56 Fed. Rep. 110; 69 Fed. Rep. 837; *Taylor* v. *Sawyer Spindle Co.*, 75 Fed. Rep. 301; *Ide* v. *Trorlicht*, 115 Fed. Rep. 137; *Fahrney* v. *Ruminer*, 153 Fed. Rep. 735; *Layton Pure Food Co.* v. *Church & Dwight Co.*, 182 Fed. Rep. 35; Paul, Trade-Marks, par. 109; Hopkins, Trade-Marks, 2d ed., par. 75, p. 172.

The well settled rules governing estoppel in general

preclude the possibility of finding that Mrs. Regis and her successor are estopped in the circumstances at bar. See Bigelow, Estoppel, 5th ed. The cases of *Carroll* v. *McIlvaine*, 171 Fed. Rep. 125; 183 Fed. Rep. 22; *Macmahan Co.* v. *Denver Co.*, 113 Fed. Rep. 468; and *Hanover Milling Co.* v. *Allen & Wheeler Co.*, 208 Fed. Rep. 513; s. c. *Hanover Milling Co.* v. *Metcalf*, 240 U. S. 403, referred to by the Circuit Court of Appeals, and *Saxlehner* v. *Eisner & Mendelson Co.*, supra, and *Kahn* v. *Gaines*, 155 Fed. Rep. 639; 161 *id.* 495, are distinguishable, and are not authority for finding an estoppel upon the facts of this case.

*Mr. Clayton B. Blakey* for respondent.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was a suit in equity brought September 24, 1912, in the United States District Court for the Western District of Kentucky, by the present petitioner, a Massachusetts corporation, against the respondent, a Kentucky corporation, together with certain individual citizens of the latter State, to restrain infringement of trade-mark and unfair competition.

The District Court granted an injunction against the corporation defendant pursuant to the prayer of the bill. 206 Fed. Rep. 570. The Circuit Court of Appeals reversed the decree and remanded the cause with directions to dismiss the bill. 226 Fed. Rep. 545. An appeal was allowed by one of the judges of that court, and afterwards we allowed a writ of certiorari. Pursuant to a stipulation, the transcript of the record filed for the purposes of the appeal was treated as a return to the writ. Under § 128, Judicial Code, as amended by Act of January 28, 1915, c. 22, § 2, 38 Stat. 803, the appeal must be dismissed, and the cause will be determined on the writ of certiorari.

The essential facts are as follows: About the year 1877 Ellen M. Regis, a resident of Haverhill, Massachusetts, began to compound and distribute in a small way a preparation for medicinal use in cases of dyspepsia and some other ailments, to which she applied as a distinguishing name the word "Rex"—derived from her surname. The word was put upon the boxes and packages in which the medicine was placed upon the market, after the usual manner of a trade-mark. At first alone, and afterwards in partnership with her son under the firm name of "E. M. Regis & Company," she continued the business on a modest scale; in 1898 she recorded the word "Rex" as a trademark under the laws of Massachusetts (Acts 1895, p. 519, c. 462, § 1); in 1900 the firm procured its registration in the United States Patent Office under the Act of March 3, 1881, c. 138, 21 Stat. 502; in 1904 the Supreme Court of Massachusetts sustained their trade-mark right under the state law as against a concern that was selling medicinal preparations of the present petitioner under the designation of "Rexall remedies" (*Regis* v. *Jaynes*, 185 Massachusetts, 458); afterwards the firm established priority in the mark as against petitioner in a contested proceeding in the Patent Office; and subsequently, in the year 1911, petitioner purchased the business with the trade-mark right, and has carried it on in connection with its other business, which consists in the manufacture of medicinal preparations, and their distribution and sale through retail drug stores, known as "Rexall stores," situate in the different States of the Union, four of them being in Louisville, Kentucky.

Meanwhile, about the year 1883, Theodore Rectanus, a druggist in Louisville, familiarly known as "Rex," employed this word as a trade-mark for a medicinal preparation known as a "blood purifier." He continued this use to a considerable extent in Louisville and vicinity, spending money in advertising and building up a trade, so that—

except for whatever effect might flow from Mrs. Regis'
prior adoption of the word in Massachusetts, of which he
was entirely ignorant—he was entitled to use the word as
his trade-mark. In the year 1906 he sold his business, in-
cluding the right to the use of the word, to respondent;
and the use of the mark by him and afterwards by re-
spondent was continuous from about the year 1883 until
the filing of the bill in the year 1912.

Petitioner's first use of the word "Rex" in connection
with the sale of drugs in Louisville or vicinity was in
April, 1912, when two shipments of "Rex Dyspepsia
Tablets," aggregating 150 boxes and valued at $22.50,
were sent to one of the "Rexall" stores in that city.
Shortly after this the remedy was mentioned by name in
local newspaper advertisements published by those stores.
In the previous September, petitioner shipped a trifling
amount—five boxes—to a drug store in Franklin, Ken-
tucky, approximately 120 miles distant from Louisville.
There is nothing to show that before this any customer in
or near Kentucky had heard of the Regis remedy, with or
without the description "Rex," or that this word ever
possessed any meaning to the purchasing public in that
State except as pointing to Rectanus and the Rectanus
Company and their "blood purifier." That it did and
does convey the latter meaning in Louisville and vicinity
is proved without dispute. Months before petitioner's
first shipment of its remedy to Kentucky, petitioner was
distinctly notified (in June, 1911,) by one of its Louis-
ville distributors that respondent was using the word
"Rex" to designate its medicinal preparations, and that
such use had been commenced by Mr. Rectanus as much
as 16 or 17 years before that time.

There was nothing to sustain the allegation of unfair
competition, aside from the question of trade-mark in-
fringement. As to this, both courts found, in substance,
that the use of the same mark upon different but somewhat

related preparations was carried on by the parties and their respective predecessors contemporaneously, but in widely separated localities, during the period in question— between 25 and 30 years—in perfect good faith, neither side having any knowledge or notice of what was being done by the other. The District Court held that because the adoption of the mark by Mrs. Regis antedated its adoption by Rectanus, petitioner's right to the exclusive use of the word in connection with medicinal preparations intended for dyspepsia and kindred diseases of the stomach and digestive organs must be sustained, but without accounting for profits or assessment of damages for unfair trade; citing *McLean* v. *Fleming*, 96 U. S. 245; *Menendez* v. *Holt*, 128 U. S. 514; *Saxlehner* v. *Eisner & Mendelson Co.*, 179 U. S. 19, 39; *Saxlehner* v. *Siegel-Cooper Co.*, 179 U. S. 42. The Circuit Court of Appeals held that in view of the fact that Rectanus had used the mark for a long period of years in entire ignorance of Mrs. Regis' remedy or of her trade-mark, had expended money in making his mark well known, and had established a considerable though local business under it in Louisville and vicinity, while on the other hand during the same long period Mrs. Regis had done nothing, either by sales agencies or by advertising, to make her medicine or its mark known outside of the New England States, saving sporadic sales in territory adjacent to those States, and had made no effort whatever to extend the trade to Kentucky, she and her successors were bound to know that, misled by their silence and inaction, others might act, as Rectanus and his successors did act, upon the assumption that the field was open, and therefore were estopped to ask for an injunction against the continued use of the mark in Louisville and vicinity by the Rectanus Company.

The entire argument for the petitioner is summed up in the contention that whenever the first user of a trade-mark has been reasonably diligent in extending the

territory of his trade, and as a result of such extension has in good faith come into competition with a later user of the same mark who in equal good faith has extended his trade locally before invasion of his field by the first user, so that finally it comes to pass that the rival traders are offering competitive merchandise in a common market under the same trade-mark, the later user should be enjoined at the suit of the prior adopter, even though the latter be the last to enter the competitive field and the former have already established a trade there. Its application to the case is based upon the hypothesis that the record shows that Mrs. Regis and her firm, during the entire period of limited and local trade in her medicine under the Rex mark, were making efforts to extend their trade so far as they were able to do with the means at their disposal. There is little in the record to support this hypothesis; but, waiving this, we will pass upon the principal contention.

The asserted doctrine is based upon the fundamental error of supposing that a trade-mark right is a right in gross or at large, like a statutory copyright or a patent for an invention, to either of which, in truth, it has little or no analogy. *Canal Co.* v. *Clark,* 13 Wall. 311, 322; *Mc-Lean* v. *Fleming,* 96 U. S. 245, 254. There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business. *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403, 412–414.

The owner of a trade-mark may not, like the proprietor

of a patented invention, make a negative and merely prohibitive use of it as a monopoly. See *United States* v. *Bell Telephone Co.*, 167 U. S. 224, 250; *Bement* v. *National Harrow Co.*, 186 U. S. 70, 90; *Paper Bag Patent Case*, 210 U. S. 405, 424.

In truth, a trade-mark confers no monopoly whatever in a proper sense, but is merely a convenient means for facilitating the protection of one's good-will in trade by placing a distinguishing mark or symbol—a commercial signature—upon the merchandise or the package in which it is sold.

It results that the adoption of a trade-mark does not, at least in the absence of some valid legislation enacted for the purpose, project the right of protection in advance of the extension of the trade, or operate as a claim of territorial rights over areas into which it thereafter may be deemed desirable to extend the trade. And the expression, sometimes met with, that a trade-mark right is not limited in its enjoyment by territorial bounds, is true only in the sense that wherever the trade goes, attended by the use of the mark, the right of the trader to be protected against the sale by others of their wares in the place of his wares will be sustained.

Property in trade-marks and the right to their exclusive use rest upon the laws of the several States, and depend upon them for security and protection; the power of Congress to legislate on the subject being only such as arises from the authority to regulate commerce with foreign nations, and among the several States and with the Indian tribes. *Trade-Mark Cases*, 100 U. S. 82, 93.

Conceding everything that is claimed in behalf of the petitioner, the entire business conducted by Mrs. Regis and her firm prior to April, 1911, when petitioner acquired it, was confined to the New England States with inconsiderable sales in New York, New Jersey, Canada, and Nova Scotia. There was nothing in all of this to give her

any rights in Kentucky, where the principles of the common law obtain. *Hunt* v. *Warnicke's Heirs,* 3 Kentucky (Hardin), 61, 62; *Lathrop* v. *Commercial Bank,* 8 Dana (Ky.), 114, 121; *Ray* v. *Sweeney,* 14 Busn. (Ky.), 1, 9; *Aetna Ins. Co.* v. *Commonwealth,* 106 Kentucky, 864, 881; *Nider* v. *Commonwealth,* 140 Kentucky, 684, 687. We are referred to no decision by the courts of that State, and have found none, that lays down any peculiar doctrine upon the subject of trade-mark law. There is some meager legislation, but none that affects this case (Kentucky Stats., § 2572c, subsec. 7; §§ 4749–4755). There was nothing to prevent the State of Kentucky (saving, of course, what Congress might do within the range of its authority) from conferring affirmative rights upon Rectanus, exclusive in that Commonwealth as against others whose use of the trade-mark there began at a later time than his; but whether he had such rights, or respondent now has them, is a question not presented by the record; there being no prayer for an injunction to restrain petitioner from using the mark in the competitive field.

It is not contended, nor is there ground for the contention, that registration of the Regis trade-mark under either the Massachusetts statute or the act of Congress, or both, had the effect of enlarging the rights of Mrs. Regis or of petitioner beyond what they would be under common-law principles. Manifestly, the Massachusetts statute (Acts 1895, p. 519, c. 462) could have no extra-territorial effect. And the Act of Congress of March 3, 1881, c. 138, 21 Stat. 502, applied only to commerce with foreign nations or the Indian tribes, with either of which this case has nothing to do. See *Ryder* v. *Holt,* 128 U. S. 525. Nor is there any provision making registration equivalent to notice of rights claimed thereunder. The Act of February 20, 1905, c. 592, 33 Stat. 724, which took the place of the 1881 Act, while extending protection to trade-marks used in interstate commerce, does not en-

large the effect of previous registrations, unless renewed under the provisions of its twelfth section, which has not been done in this case; hence we need not consider whether anything in this act would aid the petitioner's case.

Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question. See *Canal Co. v. Clark*, 13 Wall. 311, 323; *McLean v. Fleming*, 96 U. S. 245, 251; *Manufacturing Co. v. Trainer*, 101 U. S. 51, 53; *Columbia Mill Co. v. Alcorn*, 150 U. S. 460, 463. But the reason is that purchasers have come to understand the mark as indicating the origin of the wares, so that its use by a second producer amounts to an attempt to sell his goods as those of his competitor. The reason for the rule does not extend to a case where the same trademark happens to be employed simultaneously by two manufacturers in different markets separate and remote from each other, so that the mark means one thing in one market, an entirely different thing in another. It would be a perversion of the rule of priority to give it such an application in our broadly extended country that an innocent party who had in good faith employed a trademark in one State, and by the use of it had built up a trade there, being the first appropriator in that jurisdiction, might afterwards be prevented from using it, with consequent injury to his trade and good-will, at the instance of one who theretofore had employed the same mark but only in other and remote jurisdictions, upon the ground that its first employment happened to antedate that of the first-mentioned trader.

In several cases federal courts have held that a prior use of a trade-mark in a foreign country did not entitle its owner to claim exclusive trade-mark rights in the United States as against one who in good faith had adopted a like trade-mark here prior to the entry of the foreigner into this market. *Richter v. Anchor Remedy Co.*, 52 Fed.

Rep. 455, 458; *Richter* v. *Reynolds,* 59 Fed. Rep. 577, 579; *Walter Baker & Co.* v. *Delapenha,* 160 Fed. Rep. 746, 748; *Gorham Mfg. Co.* v. *Weintraub,* 196 Fed. Rep. 957, 961.

The same point was involved in *Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403, 415, where we said: "In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant, unless at least it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like."

In this case, as already remarked, there is no suggestion of a sinister purpose on the part of Rectanus or the Rectanus Company; hence the passage quoted correctly defines the status of the parties prior to the time when they came into competition in the Kentucky market. And it results, as a necessary inference from what we have said, that petitioner, being the newcomer in that market, must enter it subject to whatever rights had previously been acquired there in good faith by the Rectanus Company and its predecessor. To hold otherwise—to require Rectanus to retire from the field upon the entry of Mrs. Regis' successor—would be to establish the right of the latter as a right in gross, and to extend it to territory wholly remote from the furthest reach of the trade to which it was annexed, with the effect not merely of depriving Rectanus of the benefit of the good-will resulting from his long-continued use of the mark in Louisville and vicinity, and his substantial expenditures in building up his trade, but of enabling petitioner to reap substantial benefit from the publicity that Rectanus

has thus given to the mark in that locality, and of confusing if not misleading the public as to the origin of goods thereafter sold in Louisville under the Rex mark, for, in that market, until petitioner entered it, "Rex" meant the Rectanus product, not that of Regis.

In support of its contention petitioner cites the same cases that were relied upon by the District Court, namely, *McLean* v. *Fleming*, 96 U. S. 245; *Menendez* v. *Holt*, 128 U. S. 514; *Saxlehner* v. *Eisner & Mendelson Co.*, 179 U. S. 19, 39; and *Saxlehner* v. *Siegel-Cooper Co.*, 179 U. S. 42. They exemplify the rule that, where the proof of infringement is clear, a court of equity will not ordinarily refuse an injunction for the future protection of the proprietor of a trade-mark right, even where his acquiescence and laches have been such as to disentitle him to an accounting for the past profits of the infringer. The rule finds appropriate application in cases of conscious infringement or fraudulent imitation, as is apparent from a reading of the opinions in those cases; but it has no pertinency to such a state of facts as we are now dealing with. In *McLean* v. *Fleming,* the only question raised in this court that affected the right of the appellee to an injunction was whether the Circuit Court had erred in finding that defendant's labels "Dr. McLean's Universal Pills," etc., infringed complainant's label "Dr. C. McLane's Celebrated Liver Pills," and this turned upon whether the similarity was sufficient to deceive ordinarily careful purchasers. The evidence showed without dispute that from the beginning of his use of the offending labels the defendant (McLean) had known of the McLane liver pills, and raised at least a serious question whether he did not adopt his labels for the purpose of palming off his goods as those of complainant. What he controverted was that his labels amounted to an infringement of complainant's, and when this was decided against him the propriety of the injunction was clear. In *Menendez* v.

*Holt,* likewise, defendants (Menendez) admitted the existence of the brand in question—the words "La Favorita" as applied to flour—and admitted using it, but denied that Holt & Company were the owners, alleging that one Rider was a former member of that firm and entitled to use the brand, and that under him defendants had sold their flour branded "La Favorita, S. O. Rider." There was, however, no question but that defendants adopted the brand knowing it to be already in use by others. In the *Saxlehner Cases,* the facts were peculiar, and need not be rehearsed; injunctions were allowed to restrain the sale of certain waters in bottles and under labels in which those of complainant were intentionally imitated. In all four cases the distinguishing features of the present case were absent.

Here the essential facts are so closely parallel to those that furnished the basis of decision in the *Allen & Wheeler Case,* reported *sub nom. Hanover Milling Co.* v. *Metcalf,* 240 U. S. 403, 419–420, as to render further discussion unnecessary. Mrs. Regis and her firm, having during a long period of years confined their use of the "Rex" mark to a limited territory wholly remote from that in controversy, must be held to have taken the risk that some innocent party might in the meantime hit upon the same mark, apply it to goods of similar character, and expend money and effort in building up a trade under it; and since it appears that Rectanus in good faith, and without notice of any prior use by others, selected and used the "Rex" mark, and by the expenditure of money and effort succeeded in building up a local but valuable trade under it in Louisville and vicinity before petitioner entered that field, so that "Rex" had come to be recognized there as the "trade signature" of Rectanus and of respondent as his successor, petitioner is estopped to set up their continued use of the mark in that territory as an infringement of the Regis trade-mark. Whatever confusion may have

arisen from conflicting use of the mark is attributable to petitioner's entry into the field with notice of the situation; and petitioner cannot complain of this. As already stated, respondent is not complaining of it.

*Decree affirmed.*