### SOCONY–VACUUM OIL CO. v. OIL CITY REFINERS, Inc., et al.

### Civ. A. No. 20238.

District Court, N. D. Ohio, E. D.

Feb. 20, 1942.

Hadley F. Freeman, of Freeman, Sweet, Albrecht & Williams, of Cleveland, Ohio, for plaintiff.

Albert R. Teare, of Bates, Teare & McBean, of Cleveland, Ohio, for defendant.

WILKIN, District Judge.

This case was heard on exceptions to the report of the special master and on the application for action on the master's report. Upon due consideration thereof and the numerous briefs, the court finds that said exceptions, save as hereinafter noted, are not well taken and are therefore overruled, and that the report of the master, save its recommendation, is supported by the evidence and the law, and the report as herein modified is approved and confirmed.

The master recommends a permanent restraining order enjoining the use by defendant of any flying horse symbol. While, as stated, the master's finding of facts is supported by the evidence and his conclusions are supported by the law, yet this court cannot accept the master's recommendation as broadly as it is stated. Applying the law to the facts of this case, the court feels that the defendant should be restrained from the use of any flying horse everywhere, as recommended, except in the State of Ohio and that therein it should be restrained from the use only of a red flying horse. The plaintiff's prayer was that the defendant "be permanently enjoined from using any symbol of a flying red horse". The court is not prompted to restrict its order to a flying red horse merely because of that language in the complaint, for there is a prayer for other and general relief. The court's view is based upon the fact that

---

the plaintiff's trade-mark was definitely a flying red horse whereas the defendant had established rights in Ohio in the symbol of a flying white horse. As stated in the master's finding of ultimate facts (4): "The mark which the defendant used prior to the time when the plaintiff began to use it in this field was usually white".

In conclusion (b) the master states: "That the defendant had made sufficient use of the mark of a flying horse prior to the time of the plaintiff's entry into this territory so that it had acquired a right to use this mark as a trade symbol at the time when the plaintiff first began to use the symbol here, to wit, in October, 1932."

At that time, during the fall of 1932, the plaintiff began extensive use of a red flying horse in the territory. And the master found that such use was not a violation of defendant's rights because defendant's use of the flying horse symbol had not been confined to a single horse, nor a red horse, and had been intermittent.

In conclusion (d) the master finds that the defendant's "disregard of public right and the plaintiff's good will and business" consisted of its "finally using a flying red horse to the exclusion of any other color", at the time "knowing of the trade value which had been attached to it by the plaintiff". This should be enjoined.

In conclusion (c) the master says: "The difference in color as between a red flying horse and a white flying horse would not be sufficient to avoid confusion in the public mind".

That statement is no doubt true, but it is not incumbent upon the court in the circumstances to alleviate that confusion. The conditions which were found to exist prior to the defendant's exclusive use of a red horse, were not the result of either party's wrongful conduct. The plaintiff had used a red flying horse in foreign trade in 1916 and in 1911 had registered such symbol as a trade-mark, renewing the registration in 1931. (U. S. Trade Mark 287746.) The defendant, on the other hand, in 1931 and 1932, without any knowledge of the plaintiff's prior use of a flying horse, had de-veloped the use of such a symbol in Ohio. The evidence reveals, however, that with the exception of some intermittent, sporadic or occasional use of a flying horse red in color, the defendant's symbol, for the most part, was a flying horse or horses of "horsepower" design and white or varied in color. Under the doctrine announced in the Rectanus case, United Drug Co. v. Thedore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, the defendant's established rights in the limited territory should be protected. They should, however, be strictly limited so as not to interfere unduly with the plaintiff's rights in its established trade-mark.

The latter part of conclusion (c) states: "* * * such rights of the respective parties as existed when the conflict arose were not affected by the fact that the plaintiff's use was of a red flying horse symbol while that of the defendant generally was white".

If A, having no established rights in a flying horse symbol, came into the territory where B had well-established rights in such symbol, A could not justify the infringement and confusion by showing merely that his was a horse of different color. But when, as in this case, each party had established rights in a flying horse different in color from the other, neither should be expected to surrender its established rights merely because of some confusion in the public mind. The conflict of interests which such confusion entails can only be avoided by agreement of parties. If they cannot dissolve their differences by conciliatory action, they will have to endure the consequences.

It follows from what has been said that the relief prayed in the complaint should be granted upon the condition that the defendant's rights to the symbol of a flying white horse should be respected by the plaintiff. Since there is no evidence of any intention on the part of the plaintiff to use a flying white horse, there is no occasion for any order; but the rights of the defendant in such symbol are recognized and can be protected, if necessary.

An order may be drawn in accordance with the Rules.