## COHN–GOLDWATER MFG. CO. v. WILK SHIRT CORPORATION.

No. 237.

Circuit Court of Appeals, Second Circuit.

March 5, 1945.

Affirmed.

Albert J. Fihe, of Chicago, Ill., for appellant.

Morris Kirschstein, of New York City, for appellee.

Before EVANS, CLARK, and FRANK, Circuit Judges.

EVANS, Circuit Judge.

This is a trade-mark infringement suit wherein the District Court granted the defendant, on its counterclaim, the exclusive use of its trade name "Wilshire" on shirts, in 45 states, and granted plaintiff the right to use the same trade name, also on shirts, solely in the State of California. It held the plaintiff's registered trade-mark to be invalid because not in exclusive use for one year prior to its date of registration, on October 20, 1936. The trial court also found that the plaintiff, selling in California, and the defendant, selling in New York, independently of each other and ignorant of each other's adoption of the name, Wilshire, began the use of this name on its shirts. The plaintiff preceded the defendant in such use by a month or two, having begun in December, 1934, while defendant first used the name in January, 1935.

Plaintiff unfortunately had destroyed its records for the time prior to 1938 and was unable to prove the scope of its sales of Wilshire shirts for the years 1935 to 1938.[1]

[1] The testimony in regard to the destruction of these records is herewith reproduced. It seems no further effort was made to fill this gap in evidence.

"If you have any proof of any earlier sales outside the State of California, I would like to see it, sir?

"A. Well, you see, the trouble is our sales records have been destroyed, not only outside of California but in California as well.

"By Mr. Fihe: Previous to what year?

"A. I think I could get statements from customers who have purchased these shirts from outside of the State of California prior to 1938.

"Q. Well, if you can produce any proof, I would like to see it?

"By Mr. Fihe: That would take some time, wouldn't it, Mr. Armer?

"A. Yes, it would require quite some time.

"Mr. Fihe: I suggest you write some of your representative customers, like we did in the case of Mr. Moore out here in Van Nuys, and let them send you some of their original bills, if they have them.

"A. It would be pretty difficult. Very

Defendant proved its use of the name in 1935 in 37 states, and in 1936, in 9 additional states.

The name Wilshire had been used prior to both plaintiff's and defendant's use, by a Newmark 'Co. which had ceased to exist. Plaintiff had oral consent from one connected with that company to use the mark. Defendant, after a search of the Trade Mark registrations and discovery of the registration of Wilshire by Newmark Co., learned that the Newmark Co. had gone out of existence.

Defendant's Wilshire shirts sell at from $10 to $12 per dozen wholesale and plaintiff's sell for $15 to $40 per dozen. Plaintiff's volume of sales greatly exceeds that of defendant's. In 1941 plaintiff sold over $680,000 [2] of Wilshire shirts, whereas defendant sold $204,179 of such shirts in the the same year. Plaintiff spends [3] three times as much as defendant, on advertising.

Confusion between the two products began in 1938 in Texas and Nebraska as well as in California.

As between two well-nigh simultaneous users of a trade-name this apportionment of territory would seem not a little harsh— 45 states to 1. But the harshness, if any, is due to the fact that plaintiff was unable to factually substantiate its extended territorial claims with any contemporaneous, documentary, or even oral, proof. On the other hand, defendant's case was supported in detail by order blanks dated in 1935 and the following years, for substantial-sized orders, from many states. It showed sales in 46 states for 1935 and 1936.

Plaintiff showed the purchase of 5,000 labels (with name Wilshire) in December, 1934, and the representative of the label manufacturing company testified that they had been ordered continuously since. It was not shown, however, that any of these labels were used on shirts sold outside of California.

The president of the plaintiff company was able to identify many documents indicative of wide and substantial sales of plaintiff's Wilshire shirts, in the year 1938 and thereafter. He stated plaintiff had begun national advertising of Wilshire shirts in 1937 or 1938, but this was after defendant had occupied the field.

A careful reading of the record convinces us that the District Court's findings are supported by the evidence. Plaintiff certainly did not have exclusive use of the word Wilshire for a year prior to that term's registration in October, 1936, and it can claim no protection thereunder. It was unable to present evidence of establishment of its trade name in territories outside of California, whereas defendant made such showing. The trial court's apportionment of territory to the respective claimant of the same trademark is sustained by precedent. This practice was sanctioned in Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L. Ed. 713, and United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 51, 63 L.Ed. 141.[4] See also Derenberg, Trade Mark Protection, p. 455.

The decree of the District Court is affirmed.

---

few retail merchants keep their bills that far back. I could get letters from them to that effect, I am sure, if that will suffice.

"Mr. Fihe: Whatever you do in that regard, I suggest you do it, and when you get a certain amount of that material ready, Mr. Lyon and I will get together and we might be able to stipulate it into the record, or otherwise put it in some way."

[2] Plaintiff's president stated the "majority" of this figure was for Wilshire brand shirts.

[3] $9,000 annually.

[4] In the United Drug case the court stated: "Undoubtedly, the general rule is that, as between conflicting claimants to the right to use the same mark, priority of appropriation determines the question. * * But the reason is that purchasers have come to understand the mark as indicating the origin of the wares, so that its use by a second producer amounts to an attempt to sell his goods as those of his competitor. The reason for the rule does not extend to a case where the same trade-mark happens to be employed simultaneously by two manufacturers in different markets separate and remote from each other, so that the mark means one thing in one market, an entirely different thing in another. It would be a perversion of the rule of priority to give it such an application in our broadly extended country that an innocent party who had in good faith employed a trade-mark in one state, and by the use of it had built up a trade there, being the first appropriator in that jurisdiction, might afterwards be prevented from using it, with consequent injury to his trade and good will, at the instance of one who theretofore had employed the same mark, but

only in other and remote jurisdictions, upon the ground that its first employment happened to antedate that of the first-mentioned trader."

In the Hanover Star Milling Co. case [240 U.S. 403, 36 S.Ct. 361] the court said:

"In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the question. But where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant; unless, at least, it appear that the second adopter has selected the mark with some design inimical to the interests of the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like."