47 CCPA
## RICHFIELD OIL CORPORATION
v.
## DIETERICH FIELD, INC.
### Patent Appeal No. 6457.

United States Court of Customs
and Patent Appeals.
June 29, 1960.

Munson H. Lane, Washington, D. C.
(Albert J. Fihe, Burbank, Cal., of counsel), for appellant.

Herbert J. Jacobi, Washington, D. C.
(Samuel L. Davidson, Washington, D.
C., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH,
MARTIN, and SMITH, Judges, and
Judge WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

This is an appeal by the opposer-appellant, Richfield Oil Corporation, from the decision of the Assistant Commissioner of Patents, 116 U.S.P.Q. 346, affirming the decision of the Interference Examiner and dismissing the notice of opposition.

The applicant-appellee, Dieterich Field, Inc., seeks registration of the trademark "Richfield" for hosiery. The opposition was instituted by appellant, relying on various registrations covering the mark "Richfield" alone and in combination with other words or designs, or both, for gasoline,[1] for gasoline, other engine fuels and lubricants,[2] and for storage batteries.[3]

Appellant's earlier use of the mark "Richfield" in the petroleum field is conceded.

Appellant took testimony which establishes that it has used the mark "Richfield" in connection with the sale and distribution of gasoline and other petroleum products, electric batteries and storage batteries, lubricant charts and

---

[*] United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

1. Reg. No. 201,308, issued July 21, 1925, renewed; and Reg. No. 272,812, issued July 15, 1930, renewed.

2. Reg. No. 337,055, issued July 28, 1936, renewed; and Reg. No. 260,089, *issued* Aug. 13, 1929, renewed and published in accordance with Sec. 12(c) on Mar. 7, 1950.

3. Reg. No. 327,724, issued Sept. 3, 1935, renewed.

seed envelopes containing flower seeds, the latter distributed as premiums. The testimony also refers to appellant's manufacture and distribution of specialty products, including "cycohexanes," napthenic acids, cresylic acids, paint thinners, solvents, asphalts, cleaning compositions, mineral rubbers and additives. The testimony also establishes that "cycohexane" is used in the manufacture of "nylon 66." Appellant's testimony also establishes that appellant does not manufacture nylon, and that it does not intend to do so.

Appellee did not take testimony and is restricted to its filing date, January 21, 1955, for use of the mark. Appellee's specimens of record show the mark "Richfield" applied to containers for full-fashioned hosiery.

Both parties are using the identical word mark "Richfield." However, the products of the parties on which the mark is used are different. It is appellant's position that the public, upon seeing the mark "Richfield" on hosiery, will be confused as to the source or origin of such goods and will acquire "Richfield" hosiery "under the mistaken assumption that it is one of opposer's excellent products, particularly if the same happened to be on display in or distributed by a service station or similar establishment."

■ First use as a trademark of a specific name such as "Richfield" [4] does not, by and of itself, give the first user the right to prevent subsequent fair use of the same name by others on different articles. Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 1950, 180 F.2d 250, 251, 395.

In American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317, the rule is stated:

"The mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same trademark by others on articles of a different description. There is no property in a trade-mark apart from the business or trade in connection with which it is employed. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 [39 S.Ct. 48, 63 L.Ed. 141]; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413–414 [36 S.Ct. 357, 360, 60 L.Ed. 713]."

■ The word "Richfield" does not possess the inherent distinctiveness of a fabricated word mark. Appellee, therefore, has the same right as appellant had originally to appropriate this word and to use it as its trademark on different goods subject to the qualification that such use must be a fair use.

In S. C. Johnson & Son, Inc. v. Johnson et al., doing business as Johnson Products Company, 2 Cir., 1949, 175 F.2d 176, 180, the court was asked to find that the defendant had no right to use the name "Johnson" on a cleaning fluid. Judge Learned Hand in the opinion for the court said:

"* * * We cannot conceive any justification in these circumstances for allowing it (referring to plaintiff S. C. Johnson & Son, Inc.) to reach a choking hand into a market not its own, and to deprive the defendants of an interest, natural and

---

4. While the name "Richfield" also may be a common surname, it is referred to in Webster's New International Dictionary Second Edition as a geographical name. This dictionary and the World Atlas of Encyclopedia Britannica disclose the following towns using the name "Richfield":

| 1. | Richfield, | Lincoln County, | Idaho |
| 2. | " | Marton Co., | Kansas |
| 3. | " | Hennepin Co., | Minnesota |
| 4. | " | Sarpy Co., | Nebraska |
| 5. | " | Stanly Co., | North Carolina |

proper in its origin, and after sixteen years presumably an important element in their business. *If Congress really meant to allow every first user of a mark so to stifle all excursions into adjacent markets upon showing no more than that confusion would result, it seems to us that it would have said so more clearly. * * *"* [Emphasis added.]

Here, appellant has sought to establish facts which would preclude our application of the rule of the Johnson case and has endeavored to establish its use, its intended use or, at least its association, of the mark "Richfield" with hosiery.

Appellant's testimony establishes that from time to time it has given away various premiums to encourage customers to purchase gasolines and oils distributed through its various service stations. At some date, established only as "recently," it "used in an experimental way the give-away as a sales promotion item, a liquidating premium, nylon hosiery." This experimental operation was further described in the testimony as follows:

"Well, if it were handled as a liquidating premium by the dealer, he would offer a special inducement at a price to a purchaser who would come into the station and offer the hose as an inducement to get them to come in, and if they did they would be entitled to secure, let's say, a one-dollar-and-a-half pair of hosiery for $.49 or some similar figure."

Under this experimental operation, the customers received the hosiery directly, with no coupons involved. There is no evidence, exhibit or testimony that under this operation the name "Richfield" ever appeared as a trademark on the hosiery itself. The testimony is that:

"The manufacturer's name would very probably be on either the box or the hose or possibly a little sticker in the box. But the name 'Rich-field' would be on the package somewhere. It would be on there from the standpoint of the mailing sticker on the box wherein it would be identified as coming from 'Richfield, a Richfield dealer.' "

If, as above stated, the only appearance of the mark "Richfield" on the hosiery box was limited to the mailing sticker, such use does not constitute a trademark use of the mark *on hosiery*. The Examiner of Interference, in referring to appellant's use on hosiery, correctly found "the record is silent as to whether the mark 'Richfield' was applied thereto * * *."

Neither do we think trademark use on hosiery is established by appellant under its contemplated plan involving the use of redeemable coupons. The testimony is clear that:

"Because of the inability to give customers proper sizes we have undertaken a study of a proposal for the handling of nylon hose in a different manner, that of using a coupon and the address for the mailing of the proper size to whomever are entitled to the hosiery, based on our sales promotional plan that would be in effect at that time."

The testimony further establishes that appellant's plans for using the name "Richfield" in connection with the premium distribution of hosiery is speculative at best. It is something which may be consummated at some future, speculative date. Thus, in answer to the question, "At the moment in what stage is your prepared program?" the witness answered, "Well, we plan to expand this distribution, but the decision hasn't as yet been reached as to whether we will carry additional stock or handle it on a coupon basis." As against this future speculative use of the name on hosiery, appellee has its filing date, January 21, 1955, as the date of its first use of the mark "Richfield" on hosiery. Thus, on the record, appellee is the first user of this mark on hosiery.

We agree with the Assistant Commissioner's summary of the testimony of the witnesses as follows:

" * * * *  If opposer were to give away as premiums, or sell at reduced prices, nylon hosiery at its automotive service stations, and if applicant's hosiery were given away or sold by opposer or others in automotive service stations, or if opposer should decide at some future time to manufacture hosiery and should decide to use 'Richfield' as a trademark for such hosiery, then purchaser confusion would be likely. * * * "

The record is silent as to any facts from which we can reasonably assume that purchasers of appellee's "Richfield" hosiery are likely to believe that it emanates from appellant or that appellant is the source of such hosiery. The normal methods of selling and distributing hosiery utilize retail outlets which a purchaser is not likely to associate with the retail service-station outlets of appellant. There is nothing of record which indicates that appellee's use of the mark "Richfield" is anything other than a fair use. We do not think that purchaser confusion, mistake or deceit is likely upon the facts of this case. We therefore affirm the decision of the Assistant Commissioner.

Affirmed.