This Opinion is a
Precedent of the TTAB

Mailed: December 10, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Alessandra Suuberg*

————

Serial No. 88234650

————

Alessandra Suuberg (pro se).

Marynelle W. Wilson, Trademark Examining Attorney, Law Office 113,
    Myriah Habeeb, Managing Attorney.

————

Before Zervas, Adlin and Lynch,
    Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

Alessandra Suuberg ("Applicant") seeks registration on the Principal Register

under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), of the proposed

standard character mark HAVE SOME DECENCY for the following International

Class 36 services:

> Charitable fund raising; Charitable fundraising;
> Charitable fundraising services; Charitable services,
> namely, providing financial assistance to meet the
> physical, psychological, social and other special needs of
> disabled persons; Charitable services, namely, providing

financial support to disadvantaged individuals in the United States and other countries for the purpose of facilitating health, wellness and economic development; Accepting and administering monetary charitable contributions; Accepting and administering monetary charitable contributions to fund medical research; On-line charitable fundraising.[1]

Before us are the following refusals made final in the February 8, 2021 Office Action:

1. Under Trademark Act Sections 1(a) and 45, 15 U.S.C. §§1051(a) and 1127; and Trademark Rule § 2.34(a)(1)(i), 37 C.F.R. § 2.34(a)(1)(i), Applicant has not used the mark in commerce in connection with the identified services as of the application filing date; and

2. Under Trademark Act Sections 1, 2, 3, and 45, 15 U.S.C. §§1051-1053, 1127, the mark is a slogan that does not function as a service mark to indicate the source of Applicant's services and to identify and distinguish them from others because it is a commonplace message or expression widely used by a variety of sources that merely conveys an ordinary, familiar, well-recognized concept or sentiment.[2]

## I. Non-Use of the Proposed Mark

In an application based on use in commerce under Section 1(a) of the Trademark Act, the applicant must use the mark in commerce on or in connection with all the goods and services listed in the application as of the application filing date. *See*

---

[1] Application Serial No. 88234650, filed December 19, 2018, claiming first use and first use in commerce on the same date that Applicant filed her application.

[2] February 8, 2021 Office Action, TSDR 1. Page references to the application record are to the downloadable .pdf version of the USPTO's Trademark Status & Document Retrieval (TSDR) system. References to the briefs are to the Board's TTABVUE docket system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references.

*Couture v. Playdom, Inc.*, 778 F.3d 1379, 113 USPQ2d 2042, 2043 (Fed. Cir. 2015) ("To apply for registration under Lanham Act § 1(a), a mark must be 'used in commerce.'") (citing 15 U.S.C. § 1051(a)(1)); Trademark Rule 2.34(a)(1)(i), 37 C.F.R. § 2.34(a)(1)(i)). A mark is used in commerce "on services when [1] it is used or displayed in the sale or advertising of services and [2] the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services." Section 45 of the Trademark Act, 15 U.S.C. § 1127.

"The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." *Couture*, 113 USPQ2d at 2043 (citing 15 U.S.C. § 1127 and *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 90 USPQ2d 1301, 1305 (Fed. Cir. 2009)). "'There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. ... [T]he right to a particular mark grows out of its use, not its mere adoption ....'" *Couture*, 113 USPQ2d at 2043-44 (quoting *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)); *see also* 1 ANNE GILSON LALONDE, GILSON ON TRADEMARKS § 3.02 (2021) ("[A service mark] cannot exist in gross, and no rights in it are created by mere invention, creation, adoption, or intention to make use of it at some later time. Under Section 45 it must be used in good faith, not merely to reserve a right in a mark. The very core of protectable rights in a service mark is actual use in trade.").

On June 30, 2020, the Examining Attorney downloaded webpages from Applicant's havesomedecency.org[3] website, and submitted them into the record with the July 13, 2020 Office Action. Of interest are:

● A first webpage (12 TSDR) stating "The following is placeholder text known as 'lorem ipsum,' which is scrambled Latin use by designers to mimic real copy."

● A "Donate" button on the first webpage which – according to the Examining Attorney and not contested by Applicant – leads to a second webpage (14 TSDR) stating,

> We couldn't find the page you were looking for. This is either because
>
> · There is an error in the URL entered into your web browser. …
> · The page you are looking for has been moved or deleted.

● A third webpage (17 TSDR) stating, "We are currently looking for volunteers to help shape our programs and get our organization off the ground."

● The sentence "*We are not currently accepting donations.*" Which appears on the third webpage under the heading "MAKE A DONATION." (17 TSDR).

The use of "lorem ipsum" on the website, the statement that the "lorem ipsum" is for use by designers to mimic real copy, the inoperable webpage following the "Donate" button, and Applicant's statements that she was not accepting donations and that she was looking for volunteers to "get our organization off the ground," all suggest that Applicant had not used her proposed mark in connection with the any of the services identified in her application when she filed her application.

---

[3] Applicant identified her website in the original application as havesomedecency.org.

For an explanation, we look to Applicant's submissions. Applicant explains that when she filed the application, she had recently finished a post-baccalaureate premedical program and research assistant positions in genetic and psychology research, and "incorporated a non-profit organization, applied for tax-exempt status, … registered a domain name, and concurrently filed a trademark application for a phrase that best captured her project's purpose: encouraging 'decency' in medicine and medical research."[4] She further explains that when she filed her application, she "was in the process of building a website that provided a means to get in touch, as well as an opportunity to get involved and participate in the planning process and early stages of Applicant's charitable endeavor," and "was not accepting donations from the general public through [the] website at the time of filing" but was "researching the relevant laws and requirements that might apply to soliciting donations in various jurisdictions."[5] Applicant admits that "progress in building the organization has necessarily been slow and cautious";[6] and offers that "the registration of [her proposed] trademark was a means to the end of building a charitable organization (and its tangible, customer-facing embodiment—its website)."[7] She adds that "soliciting donations from the general public is arguably

---

[4] 15 TTABVUE 3.

[5] 12 TTABVUE 16.

[6] 15 TTABVUE 3.

[7] 12 TTABVUE 16.

only a small part of the work that Applicant's category of services typically encompasses."[8]

The *Couture* case, on which the Examining Attorney relies, is relevant. In *Couture*, the applicant filed an application to register the service mark PLAYDOM under Section 1(a) of the Trademark Act, and submitted as a specimen of use a screen capture of its website, consisting of a single page that stated: "[w]elcome to PlaydomInc.com. We are proud to offer writing and production services for motion picture film, television, and new media. Please feel free to contact us if you are interested: playdominc@gmail.com." The webpage included the notice: "Website Under Construction." No services under the mark were provided until well after the application was filed. The Board found that the applicant "had not rendered his services as of the filing date of his application" because he had "merely posted a website advertising his readiness, willingness and ability to render said services," and the Federal Circuit affirmed, declaring that "[A]n applicant's preparations to use a mark in commerce are insufficient to constitute use in commerce. Rather, the mark must be actually used in conjunction with the services described in the application for the mark." *Couture*, 113 USPQ2d at 2042-43.

Just as in *Couture*, where the applicant's activities were preliminary and had not resulted in any use of the mark in commerce prior to the filing of the application, Applicant here was in the nascent stage of developing her business when she filed her application. She had just finished her education and had just formed an entity to

---

[8] *Id.*

develop her vision of "encouraging 'decency' in medicine and medical research."[9] Applicant's incorporation of her organization, application for tax-exempt status and registration of her domain name did not accord her service mark rights. *See Stawski v. Lawson*, 129 USPQ2d 1036, 1045 (TTAB 2018) (citing *Brookfield Comms., Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 50 USPQ2d 1545, 1555 (9th Cir. 1999); *In re Letica Corp.*, 226 USPQ 276, 277 (TTAB 1985)).

Turning to Applicant's website, as explained above, Applicant was in the process of building it when she filed her trademark application.[10] In fact, even though the webpage submitted as her specimen of use includes a "donate" button,[11] she acknowledges that she "was not accepting donations from the general public through [the] website at the time of filing" but was "researching the relevant laws and requirements that might apply to soliciting donations in various jurisdictions."[12] With regard to her claim that "soliciting donations from the general public is arguably only a small part of the work that Applicant's category of services typically encompasses," she does not identify what the other work is, or, more to the point, whether she performed any other charitable services prior to filing the application. In fact, other than in her sworn declaration in the original application, Applicant never states in her submissions that she offered the services identified in the application, nor does she provide any evidence in support of offering a service.

---

[9] 15 TTABVUE 3.

[10] *Id.*

[11] Specimen.

[12] 12 TTABVUE 16.

From the foregoing, we find that none of Applicant's preparatory measures amounted to use in commerce for the identified services prior to December 19, 2018, the filing date of the application. "[A]dvertising or publicizing a service that the applicant intends to perform in the future will not support registration"; the advertising must instead "relate to an existing service which has already been offered to the public." *Aycock*, 90 USPQ2d at 1306 (internal quotation marks and citations omitted). *See also In re Cedar Point, Inc.*, 220 USPQ 533, 535 (TTAB 1983) ("The question to be determined in this case is whether use of a mark in connection with the advertising of services to be available at some time in the future, but not yet available at the time of the filing of applicant's application for registration thereof, can serve as a basis for registration of the mark. We hold that it cannot."); *Greyhound Corp. v. Armour Life Ins. Co.*, 214 USPQ 473, 474 (TTAB 1982) ("[T]he announcement of a future service does not constitute use as a service. The use in advertising which creates a right in a service mark must be advertising which relates to an existing service which has already been offered to the public. [citations omitted]."); *Intermed Commc'ns, Inc. v. Chaney*, 197 USPQ 501, 507-08 (TTAB 1977) ("Mere adoption (selection) of a mark accompanied by preparations to begin its use are insufficient ... for claiming ownership of ... the mark. ... The statute requires not only the display of the mark in the sale or advertising of services but also the rendition of those services in order to constitute use of the service mark in commerce"); *see also Lyons v. Am. Coll. of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 123 USPQ2d 1024, 1029

(Fed. Cir. 2017) ("[W]e have held that mere preparation and publication of future plans do not constitute use in commerce.").

We thus conclude that the application based on use in commerce pursuant to Section 1(a) of the Trademark Act is void ab initio for non-use of the proposed mark in commerce on any of the recited services.[13] *Aycock*, 90 USPQ2d at 1305 ("The registration of a mark that does not meet the use requirement is void ab initio.").

## II. Failure to Function Refusal

Because we affirm the non-use refusal and the application is void, we need not analyze the failure to function refusal under Sections 1, 2, 3 and 45 of the Trademark Act. *See In re DTI P'ship LLP*, 67 USPQ2d 1699, 1702 (TTAB 2003) (affirmance of requirement for product information was sufficient basis to refuse registration; Board declined to reach merits of refusal based on mere descriptiveness because applicant's failure to submit required information hindered Board's ability to assess the latter refusal); *see also Chutter, Inc. v. Great Mgmt. Grp.*, 2021 USPQ2d 1001, at *49-50 (TTAB 2021) (citing *Multisorb Tech., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013) ("Like the federal courts, the Board has generally used its discretion to decide only those claims necessary to enter judgment and dispose of the case. . . [T]he

---

[13] The Examining Attorney suggested on two occasions that Applicant amend her application to seek registration under the intent-to-use provisions of Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). *See* Trademark Rules 2.34(a)(2) and 2.35(b)(1), 37 C.F.R. §§ 2.34(a)(2) and 2.35(b)(1); Trademark Manual of Examining Procedure (TMEP) §§ 806.01(b), 806.03(c), (h) (2021). Had Applicant done so, she would have had the chance to preserve her application and its filing date, and at a later date, if bona fide use of her mark had begun, make the necessary showing of use to obtain a registration. *Id.*

Board's determination of registrability does not require, in every instance, decision on every pleaded claim.")), *appeal filed*, No. 22-____ (Fed. Cir. Nov. 30, 2021).

**Decision:** The non-use refusal to register Applicant's proposed mark is affirmed.