## TREAGER v. GORDON–ALLEN, Limited.*
### No. 7281.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1934.

*Rehearing denied Sept. 5, 1934.

Charles V. Barfield and Paul C. Dana, both of San Francisco, Cal., for appellant.

Christopher M. Bradley, of San Francisco, Cal. (A. S. Hutchinson, of San Francisco, Cal., of counsel), for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

GARRECHT, Circuit Judge.

This is an appeal from a decree enjoining appellant from manufacturing or selling any granulated laundry soap under the name of "Par," or with which the word "Par" is used in any way whatsoever, and from operating or doing business under or using the name "Par Soap Company," or any other name incorporating the word "Par" in these same connections.

The facts as found by the District Court, and which are sustained by the record, are substantially as follows: The parties assert conflicting rights to the use of the word "Par" as a trade-mark in the general field of soap products. Each asks for an injunction against infringement by the other and for an accounting. Appellee's claim is based upon its use of its trade-mark upon its product and registration of the trade-mark in the United States Patent Office and in the office of the California secretary of state. Appellant claims that he had acquired a common-law trade-mark in the name prior to appellee's

use, and that the trade-mark covered the whole field of soap products.

The first use of the word "Par" by the parties in suit was in December, 1929, when a copartnership, of which appellant was a member, and all the interests of which have now been transferred to him, began using the word "Par" to designate a mechanics' hand soap paste which it was manufacturing and selling in cans. Although there had been some experimentation in the use of other trade-marks prior to that time by the partnership, it is conceded by appellee and established by the evidence that appellant's predecessor had established a common-law trade-mark in the word "Par" as to mechanics' hand soap in the states of California and Nevada before any use of that word by appellee.

In August, 1930, appellee corporation was organized for the purpose of manufacturing, selling, and distributing soaps with the intention of specializing in granulated laundry soap. It decided to use the trade-mark "Par" in marketing the granulated soap, and, after making investigation as to previous use of the name in the soap field, in the course of which, it may be noted, it did not discover appellant's use, it proceeded, in September, 1930, to market its product under that name. The name was thought to be particularly attractive and adaptable at that time because of its use in connection with miniature golf which then was at the height of its popularity. In the month of November, 1930, appellee applied for registration of the trade-mark "Par" with the United States Patent Office. Nyal Company filed an interference on the ground that it had registered the name for its shaving cream in 1924. This interference was denied by the Commissioner of Patents, and appellee's application was granted. Late in December, 1930, appellee registered the trade-mark with the secretary of state of California.

Appellee marketed its granulated soap in a pasteboard carton of distinctive shape, size, and dimensions. It spent large sums in plant investment and in carrying on an intensive advertising campaign commencing in September of 1930, and in the course of the following year and a half a very profitable business was built up. By July 15, 1932, appellee's plant investment amounted to $977,448; its advertising cost had totaled $438,835; and its net sales had amounted to $1,367,579. Appellee's selling campaign extended into the states of Oregon, Washington, California, Montana, Idaho, Utah, Nevada, Arizona, and Nebraska.

Appellee first heard of appellant's use of "Par" on its mechanics' hand soap in January, 1931. Shortly thereafter a member of the copartnership and the president of appellee corporation had a conversation, the effect of which is in dispute, about the use of the trade-mark "Par." The court found that in this conversation the use of the trade-mark for their respective products was discussed, and that an understanding was reached to the effect that there was no real conflict in the use of the name for the respective products of each concern. Whether this conversation was merely a tentative discussion or resulted in a binding agreement does not affect the decision, as it rests upon other facts. Its only significance is that it tends to show that there was no concealment or bad faith on the part of appellee in proceeding with its marketing plans.

Early in February, 1932, just prior to the filing of the complaint in this action, appellant began marketing a granulated laundry soap and a bar soap under the name "Par Soap." The granulated soap was sold in a package similar in shape and design to that used by appellee, although not a replica of it. In the marketing of this product, the appellant began to use the name "Par Soap Company" as its firm name.

So far as the "trade" or the consuming public were concerned, there was no confusion between appellant's mechanics' hand paste and appellee's granulated laundry soap. However, early in February, 1932, when appellant commenced to market granulated laundry soap and bar laundry soap, confusion between these articles and appellee's product began which has ever since continued. The court found that appellee at all times acted in good faith in using the trade-mark "Par" upon its products; that appellant in using the same trade-mark on its mechanics' hand paste likewise acted in good faith, but that in using the trade-mark upon its granulated and bar soaps, and in using the name "Par Soap Company," appellant acted in bad faith and for the purpose of taking advantage of appellee's advertising campaign popularizing "Par" laundry soap.

The court further found that: "Not only did the defendant in this case adopt a trade-mark subject to narrow limitations, but he sold a product which appealed to a restricted class of customers, namely mechanics and men doing exceptionally dirty manual work. House-wives purchasing laundry soap whether in bar or granulated form would not know of defendant's product and could not be con-

fused by the use of the same trade-mark. The difference between mechanics' hand soap and laundry soap is no less than the difference between shaving cream and laundry soap. The Commissioner of Patents held in the interference proceedings that plaintiff's use of Par on granulated laundry soap did not conflict with the use of Par on shaving cream by the Nyal Company. While the ruling of the Commissioner is not binding on the courts, it is prima facie correct and has argumentative weight. * * *"

Upon this state of facts the court granted an injunction against appellant. We hold that the record sustains the findings of the trial court.

This court is called upon to determine the question of whether appellant's common-law trade-mark "Par," by him used on mechanics' hand soap, gave him trade-mark rights to that name in the entire field of soap products.

Unlike a statutory copyright or a patent for an invention, a trade-mark confers on its owner no right in gross or at large. United Drug Co. v. Theodore Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141.

When appellee registered its trade-mark, appellant had a common-law trade-mark in "Par" under which it had acquired an exclusive right to dispose of its mechanics' hand soap, but, as appellee registered its trade-mark, appellant had no right thereafter to extend its use of the name to interfere with granulated or bar soap of appellee's manufacture.

There is a distinction as to the degree of exclusiveness of appropriation accorded to the originator of a trade-name depending upon the name selected. "If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many differing kinds of business." France Milling Co. v. Washburn-Crosby Co. (C. C. A.) 7 F. (2d) 304, 306. The line of cases cited by appellant are from cases instituted by originators of some such peculiarly significant name or phrase.

The word "Par" would not come within the class of fanciful or original words. It is a common expression which has come to suggest merit and not any particular business.

"One who devises a new, strange 'catching' word to describe his wares may and often has by timely suit prevented others from taking his word or set of words to gild the repute of even wholly different goods; * * * but one who takes a phrase which is the commonplace of self-praise like 'Blue Ribbon' or 'Gold Medal' must be content with that special field which he labels with so undistinctive a name. * * *" France Milling Co. v. Washburn-Crosby Co., supra.

Unless very narrowly applied, the word "Par" has such a general use and is such an originally descriptive term as would not be indicative of any particular maker of goods. Yale Electric Corp. v. Robertson (C. C. A.) 26 F.(2d) 972.

The District Court was correct in protecting appellant's common-law trade-mark in the word "Par" as applied to his business of marketing mechanics' hand soap. It was likewise correct in determining that appellant was guilty of unfair competition in using said trade-mark to market a granulated or bar laundry soap, or in operating under the firm name of the "Par Soap Company," and the injunction was properly granted.

Affirmed.

