## ALADDIN MFG. CO. v. MANTLE LAMP CO. OF AMERICA.

### No. 13402.

District Court, N. D. Illinois, E. D.
Dec. 31, 1934.

Maurice S. Cayne, of Chicago, Ill., for plaintiff.

W. H. F. Millar and George I. Haight, both of Chicago, Ill., for defendant.

BARNES, District Judge.

By the bill of complaint, the Aladdin Manufacturing Company (an Indiana corporation) seeks to enjoin the Mantle Lamp Company of America (an Illinois corporation) from using the word "Aladdin" in connection with portable electric lamps.

By its answer and counterclaim, the Mantle Lamp Company contends that, because of its long prior use of the word "Aladdin" in connection with kerosene mantle lamps and accessories, it is entitled to use the term "Aladdin" on all of its lamps, including portable electric lamps, and

asks that the plaintiff be enjoined from using the word on any goods which the plaintiff now sells under that name.

The evidence shows that in 1908, the defendant, Mantle Lamp Company, began the sale of kerosene mantle lamps and accessories therefor under the name "Aladdin" and has since continuously marketed those products under that name. In 1920, plaintiff, Aladdin Manufacturing Company, started the manufacture of portable electric lamps under the name "Aladdin," and has since continuously used that name in marketing its portable electric lamps. In 1931, the defendant began the manufacture of portable electric lamps, and in the following year started to use the word "Aladdin" on those lamps.

As stated above, defendant contends that its long prior use of the word "Aladdin" on kerosene mantle lamps entitles it to the use of that trade-mark on electric lamps.

The general purpose of the law of trade-marks and unfair competition is to prevent one person from passing off his goods as the goods of another. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 412, 36 S. Ct. 357, 60 L. Ed. 713. The basis of trade-mark rights is the good will of a business, which the mark serves to identify to the purchasing public. Joseph Schlitz Brewing Co. v. Houston Ice & Brewing Co. (C. C. A.) 241 F. 817, 820. But a trade-mark confers no right in gross or at large on its owner, like a statutory copyright or a patent for an invention (United Drug Co. v. Theodore Rectanus Co., 248 U. S. 90, 98, 39 S. Ct. 48, 63 L. Ed. 141), and the mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same trade-mark by others on articles of a different description (American Steel Foundries v. Robertson, 269 U. S. 372, 380, 46 S. Ct. 160, 70 L. Ed. 317). It has been said that goods are of the same class when the general and essential characteristics of the goods are the same, or when, for any other reason, they are so related or associated, either in fact or in the mind of the public, that a common trade-mark would lead purchasers to conclude that the several articles have a common origin. Standard Oil Co. v. Cal. Peach Growers (D. C.) 28 F.(2d) 283; 63 Corpus Juris, p. 318.

A kerosene mantle lamp is a mechanical device, while a portable electric lamp is an ornamental stand for supporting a light bulb. The two lamps are sold to different classes of trade, and neither in actual commercial practice is capable of supplanting the other in its field. The court is inclined to the view that kerosene mantle lamps, on the one hand, and portable electric lamps, on the other, are goods of different descriptions and classes and are not competitive.

It is true that the owner of a trade-mark has the right to use the popularity of his mark to extend his business to new lines of goods of the same general class (63 Corpus Juris, p. 318), and it is here contended by the defendant that its prior use of the mark "Aladdin" on kerosene mantle lamps gave it the right to that name in the entire field of lamp products.

In France Milling Co. v. Washburn-Crosby Co., 7 F.(2d) 304 (2d C. C. A.), it was held that a user of the trade-mark "Gold Medal," as applied to pancake flour, may enjoin similar use by one who had long used the mark for raw wheat flour. The court said (page 306): "The degree or exclusiveness of appropriation accorded to the originator of a trade-name often varies with the kind of name he originates. If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many differing kinds of business. Of this 'Kodak' is a famous example, and the English courts have prevented one from putting forth Kodak bicycles, at the suit of the originator of the name for a totally different article. * * *

"One who devises a new, strange, 'catching' word to describe his wares may and often has by timely suit prevented others from taking his word or set of words to gild the repute of even wholly different goods; * * * but one who takes a phrase which is the commonplace of self-praise like 'Blue Ribbon' or 'Gold Medal' must be content with that special field which he labels with so undistinctive a name."

In Treager v. Gordon-Allen, Ltd., 71 F.(2d) 766, 768 (9th C. C. A.), it was held that the defendant, who first used the trade-mark "Par" for mechanics' hand soap, acquired a common-law trade-mark in such words as applied to such soap, but not as applied to the whole field of soap products, and that, after plaintiff's registration of the same trade-mark for granulated laundry soap, defendant had no right to extend the use of the name to interfere with the granulated or bar soap of plaintiff's manufacture.

The court there said: "The word 'Par' would not come within the class of fanciful or original words. It is a common expression which has come to suggest merit and not any particular business. * * '* Unless very narrowly applied, the word 'Par' has such a general use and is such an originally descriptive term as would not be indicative of any particular maker of goods."

 The record here shows that the trade-mark "Aladdin" has been registered for use on more than forty different articles, and since it is not an original, arbitrary, or fanciful name, the right to use it must be a limited one. It is concluded that, under the facts in this case, the use by the defendant of the mark "Aladdin" on kerosene mantle lamps did not give it trade-mark rights to that name in the electric lamp products field.

It is stated in defendant's answer and counterclaim (page 8):

"That the defendant is the owner of the following trade-marks registered in the United States Patent Office in the classes as shown hereinafter and on the dates as hereinafter set forth:

"No. 88507, registered September 24, 1912, in Class 34, of the United States Patent Office. Covering heating, lighting and ventilating apparatus, *not including electrical apparatus.*

"No. 102424, registered February 9, 1915, in Class 34, of the United States Patent Office. Covering heating, lighting and ventilating apparatus, *not including electrical apparatus.* * * *" (Italics are the court's.)

The foregoing would indicate that defendant's trade-marks did not cover portable electric lamps, and that when the plaintiff began using the word "Aladdin" on electric lamps, it invaded no field that had previously been occupied by the defendant.

 The record shows that, although the defendant has, since 1926, had knowledge of the use by the plaintiff of the word "Aladdin" on electric lamps, it has permitted such use without protest and without legal interference until 1933, and the court is of the opinion that because of such acquiescence it would be inequitable to restrain the plaintiff's use of the word "Aladdin" in connection with its sale of portable electric lamps. France Milling Co. v. Washburn-Crosby Co. (C. C. A.) 7 F.(2d) 304; Victor Stove Co. v. Hall-Neal Furnace Co., 58 App. D. C. 65, 24 F.(2d) 893; George J. Meyer Mfg.

Co. v. Miller Mfg. Co. (C. C. A.) 24 F.(2d) 505. The court is also of opinion that such acquiescence indicates that the defendant itself considered that the plaintiff was engaged in a noncompetitive business.

The plaintiff is entitled to an injunction restraining the defendant from selling or offering for sale portable electric lamps under the name "Aladdin."

There is evidence that plaintiff sells some kerosene lamps or lanterns under the name "Aladdin." The defendant is entitled to an injunction restraining the plaintiff from using the word "Aladdin" in connection with the sale of kerosene mantle lamps or lanterns or accessories therefor.

Neither the plaintiff nor the defendant is entitled to an accounting for damages or profits.

Counsel may prepare and, on notice, present findings of fact, conclusions of law, and a decree in accordance with this memorandum.

Each side shall pay its own costs.