## MASON, AU & MAGENHEIMER CONFECTIONERY CO. v. LOOSE–WILES BISCUIT CO.

### No. 6211.

District Court, E. D. New York.

Nov. 23, 1932.

Gustav Drews, of New York City (Frederick A. Klein, of New York City, of counsel), for plaintiff.

Patterson, Eagle, Greenough & Day, of New York City (Carroll G. Walter, of New York City, of counsel), for defendant.

GALSTON, District Judge.

This action was brought by a manufacturer of candies, for the infringement of its trade-mark "Trumps." The mark was registered in the United States Patent Office under registration No. 140,938 on March 29, 1921, and under registration No. 152,874 on March 7, 1922. The defendant is also charged with unfair competition.

The defendant admits the use of the word "Trumps" in connection with the manufacture and sale of cookies, which it designates as "Sunshine Trumps Cookies," but denies that such use is an infringement of the plaintiff's trade-mark; and it also denies that it has committed any acts of unfair competition.

The plaintiff is a manufacturer of five-cent candies and bulk candies, and has not manufactured in its long existence anything but candy. It adopted and used "Trumps" as a trade-mark for its candy in May, 1921. Its candy is sold in cartons containing 24 five-cent packages. It is interesting to note that the sales in 1921 were 27,000 boxes, and then for a time fell off as follows: 1922—24,000; 1923—14,690; 1924—3,965; 1925—1069; 1926—only 860. Then they increased in 1927—3,848; 1928—12,943; 1929—12,107. Then followed a marked decline in 1930—2,285; 1931—1,275; 1932 to date 918.

The defendant first used the word "Trumps" in 1926, in connection with ginger snaps sold in bulk, to which a small label was attached. All of the products of the defendant are sold with the name "Sunshine," and have been so sold and advertised since 1908. The defendant expends a very considerable sum of money annually in advertising its products, approximately three-quarters of a million dollars a year. In 1929 it began using the word "Trumps" on its present products.

The fundamental question presented by this record is whether the trade-mark "Trumps," used by the plaintiff solely as a trade-mark for candies, is infringed by the defendant's use of "Trumps" for its cookies. There is ample authority to cover a situation of this kind.

It may be stated at the outset that the record is barren of any suggestion or of anything on which a conclusion can be based that the defendant is palming off its goods as

those of the plaintiff. It is impossible to see how any purchaser could be deceived, by the package or label of the defendant, into believing that he was getting the plaintiff's product. This is readily determined by a comparison of its package of "Sunshine Trumps Cookies" with Plaintiff's Exhibit 8, "Mason's Trumps." None of the three samples of defendant's products attached to plaintiff's interrogatories, designated A, B, and C, has the slightest resemblance to the plaintiff's package. So I shall eliminate from further consideration any suggestion of unfair competition.

■ Coming now to the question of the alleged infringement of the technical trademark: The registration No. 140,938 is for nut candy; the later registration No. 152,874 of March 7, 1922, is for candies.

The inquiry suggested is whether by any reasonable extension of its business over these many years the plaintiff's rights should be broadened so as to prohibit the defendant from using the same name for such a totally different class of article as cookies or ginger snaps. Had the plaintiff ever been a manufacturer of cookies or biscuits or allied foods, the question presented would be quite different; but in the circumstances, I think that the rights of the plaintiff must be measured by its own narrow use.

In American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317, it was said: "The mere fact that one person has adopted and used a trademark on his goods does not prevent the adoption and use of the same trade-mark by others on articles of a different description. There is no property in a trade-mark apart from the business or trade in connection with which it is employed. United Drug Co. v. [Theodore] Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141; Hanover [Star] Milling Co. v. Metcalf, 240 U. S. 403, 413, 414, 36 S. Ct. 357, 360 (60 L. Ed. 713). 'The law of trade-marks is but a part of the broader law of unfair competition' (Id.), the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another."

Under the foregoing test, certainly the defendant has invaded no field that previously was occupied by the plaintiff. The plaintiff has never lost and probably never will lose the sale of one of its five-cent candy packages as a result of the acts of the defendant. To give the plaintiff the monopoly that it seeks here would be to conclude, in defiance of the foregoing authority, that there is a property in a trade-mark apart from the business or trade in connection with which it is employed.

United Drug Co. v. Theodore Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 50, 63 L. Ed. 141, bears on the general principle. There the question arose as between two parties, one who had in good faith employed a trade-mark in one state and by its use built up a trade there, and another who had employed the same trade-mark prior thereto but had confined its use to other and remote jurisdictions. The court said: "The right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business. Hanover [Star] Milling Co. v. Metcalf, 240 U. S. 403, 412-414, 36 S. Ct. 357, 60 L. Ed. 713."

Now in the instant case, even if one were prepared to grant that cookies and candies are in the same general category of foods, with the same descriptive properties—which I may say I myself doubt—still plaintiff's business was exclusively that of a candy manufacturer. It had no good will in any other line of manufactured goods. The case might well be different if a history of fifty years devoted exclusively to the manufacture of candy had embraced any allied article of food.

In United Drug Co. v. Rectanus Co., it was also said:

"The owner of a trade-mark may not, like the proprietor of a patented invention, make a negative and merely prohibitive use of it as a monopoly. See United States v. American Bell Teleph. Co., 167 U. S. 224, 250, 17 S. Ct. 809, 42 L. Ed. 144; E. Bement & Sons v. National Harrow Co., 186 U. S. 70, 90, 22 S. Ct. 747, 46 L. Ed. 1058; Paper Bag Patent Case, 210 U. S. 405, 424, 28 S. Ct. 748, 52 L. Ed. 1122.

"In truth, a trade-mark confers no monopoly whatever in a proper sense, but is merely a convenient means for facilitating the protection of one's good-will in trade by placing a distinguishing mark or symbol—a commercial signature—upon the merchandise or the package in which it is sold."

A dominant note of the case is "that the right of protection in advance of the extension of the trade" does not result from the mere adoption of a trade-mark. It is

true that in that case territorial rights particularly were the subject of consideration; but I see no reason why the principle of the case should not be extended to circumstances such as are presented herein.

Now, of course, there is a class of cases which holds, in accordance with well understood law, that if the articles are of the same class and possess the same descriptive properties, infringement will lie. Plaintiff contends that candies and cookies are in the same class and have the same distinctive properties, because in making classifications of merchandise the Commissioner of Patents has put all "foods and ingredients of foods" in one class. But that classification is not controlling, for, if it were, then the plaintiff as a manufacturer of candy could successfully assert its trade-mark rights in respect to any article of food or ingredient of food that fell within class 46 as established by the Patent Office. The contrary was held in Paul F. Beich Co. v. Kellogg Toasted Corn Flakes Co., 49 App. D. C. 186, 262 F. 640. In that case it was said: "the general and essential characteristics of breakfast foods and candy are different, and we are of opinion that the use of a mark by a dealer in one leaves its use open to a manufacturer of the other."

Nor is there any proof in the case here presented that candy manufacturers are in the habit of engaging in the production of cookies.

In W. R. Roach & Co. v. G. & J. Lo Bue Bros., 57 App. D. C. 96, 17 F.(2d) 684, the applicant sought to have a trade-mark registered for use upon macaroni. The application was opposed by a prior registrant of a mark used on canned goods, canned vegetables, canned salmon, canned pork and beans, canned evaporated milk, fresh fruits, fresh vegetables, coffee, tea, and similar products. The ruling of the examiner that the goods of the respective parties were not of the same descriptive properties was affirmed. In the same way candy and cookies have this in common, that they are foods, but their descriptive qualities are different. See, also, Pabst Brewing Co. v. Decatur Brewing Co. (C. C. A.) 284 F. 110, in which it was held that the name "Blue Ribbon" as a trade-mark for beer was not infringed by its use as a trade-mark for a malt extract.

There is another feature of this case that invites discussion. The name "Trumps" itself is not so original, arbitrary, or fanciful, as to indicate complete appropriation by the plaintiff, for, as was said by Judge Hough in France Milling Co. v. Washburn-Crosby Co. (C. C. A.) 7 F.(2d) 304, 306, in considering whether plaintiff's use of "Gold Medal" as a mark on prepared flour created rights sufficient to enjoin the defendant from the use of the same mark on straight flour:

"To take another view of the matter, the degree or exclusiveness of appropriation accorded to the originator of a trade-name often varies with the kind of name he originates. If the name or mark be truly arbitrary, strange, and fanciful, it is more specially and peculiarly significant and suggestive of one man's goods, than when it is frequently used by many and in many differing kinds of business. Of this 'Kodak' is a famous example, and the English courts have prevented one from putting forth Kodak bicycles, at the suit of the originator of the name for a totally different article. Eastman v. Kodak Cycle Co., 15 R. P. C. 105; cf. Re Dunn's Trade-Mark, 7 R. P. C. 311, and Dunlop v. Dunlop, 16 R. P. C. 12. In this court the same influence is seen in Aunt Jemima Mills Co. v. Rigney [& Co.] 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039, where the above line of cases is quoted and relied on.

"The phrase 'Gold Medal' is distinctly not in the same class of original, arbitrary, or fanciful words as 'Kodak' and 'Aunt Jemima.'"

A similar situation exists with respect to "Trumps," for this name has been used not only on candy but also as a trade-mark for wheat, flour, on mint candy, on cigars, on shirts, and on lump sugar; and the figures resembling card suits, hearts, diamonds, spades, and clubs, have been used upon another brand of cookies other than the defendant's.

I conclude, therefore, that defendant's use of the word "Trumps" on cookies is not an infringement of the plaintiff's trade-mark.

Accordingly, the defendant may have a decree, dismissing the complaint.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.