**A. C. E., Inc., v. ACE SPECIALTIES CO.**
**No. 5954.**

District Court, E. D. Michigan, S. D.
Feb. 28, 1947.

Frazer & Popkin and Samuel Weisman, all of Detroit, Mich., for plaintiff.

Whittemore, Hulbert & Belknap, J. Frederick Wilson, and Bodman, Longley, Bogle, Middleton & Armstrong, all of Detroit, Mich., for defendant.

LEDERLE, District Judge.

### Findings of Fact.

1. This action, seeking an injunction, accounting and treble damages for alleged infringement of a registered trade mark and

unfair competition, was instituted September 17, 1946, by A.C.E. Incorporated, a Michigan corporation, against another Michigan corporation, Ace Specialties Company. The defendant filed a counterclaim for an injunction to restrain plaintiff from infringing and unfairly competing with defendant's common law trade mark and business. The last testimony was introduced January 13, 1947, and final briefs were filed January 23, 1947. The whole controversy relates to use of the word "Ace" applied to lock wrenches sold in interstate commerce by both parties as "Ace Lock Wrenches," and the same set of acts and circumstances alleged as infringement of the registered trade mark is relied on by each party to prove the unfair competition alleged against the other. The office of each party is located within this Division of this District.

2. The registration under which plaintiff claims, No. 387,709, was applied for December 13, 1940, and issued May 27, 1941, to Ace Lubricating Equipment Company, Inc., another Michigan corporation, on Automatic Self-Feeding Greasing Cups, in Class 23, Cutlery, Machinery, Tools and parts thereof. The mark consists of the word "Ace" enclosed within a diamond. This registrant is not a party to this litigation. Automatic Lubricators, or Self-Feeding Greasing Cups, bearing the trade mark "Ace" enclosed within a diamond, were manufactured and sold until June 7, 1945, by said trade mark registrant under Patent No. 2,294,673, on Automatic Lubricators. Said registrant has never manufactured or sold lock wrenches. Neither defendant nor plaintiff, nor any of plaintiff's incorporators, has ever manufactured Automatic Lubricators, or Self-Feeding Greasing Cups, nor sold them as their own goods.

3. Defendant has been continuously engaged in manufacturing and selling tools since its incorporation on July 2, 1945. The mark used by defendant consists of an ace of spades enclosed within three circles, in the center of which circles appears the words "Ace Specialties Co., Detroit, Michigan," which has been continuously applied to all types of goods manufactured and sold by defendant in Michigan and in interstate commerce since early in 1946. Defendant's first public use of this mark and designation on the lock wrench was April 15, 1946. Between March 20, 1946, and April 15, 1946, defendant's lock wrenches bore a mark consisting of the word "Ace" enclosed within a diamond. In addition, the handles of all wrenches manufactured and sold by defendant since April 15, 1946, have had stamped therein the words "AL 10. Ace Specialties Co. Detroit." "AL 10" means in the trade, Ace Lock Wrench, 10 inch.

4. Business relations between plaintiff's incorporators and defendant began late in 1945. These parties knew in the latter part of December, 1945, that defendant was about to embark on the manufacture and sale of a lock wrench to be known as the "Ace Lock Wrench." From that time on, the parties in their dealings between themselves and with third parties referred to this item as the "Ace Lock Wrench," and the lock wrench which defendant subsequently, on March 20, 1946, put on the market in Michigan and throughout the United States became known in the trade as the "Ace Lock Wrench." Defendant has consistently carried the designation "Ace Lock Wrench", coupled with its corporate name, on cartons and packages in which such wrenches were packed and sold. Defendant's business in Ace Lock Wrenches to date has approximated $200,000.00.

5. Plaintiff has applied a mark, consisting of the word "Ace" enclosed within a diamond, to identical lock wrenches manufactured for it by other manufacturers and sold by plaintiff in Michigan and in interstate commerce by the trade designation of "Ace Lock Wrench" since June, 1946, after termination of business relations between plaintiff and defendant. Other than the word "Ace" enclosed within a diamond, no mark or indication of source or identity is carried on plaintiff's wrench. Prior to June, 1946, neither plaintiff nor any of its incorporators ever manufactured or sold lock wrenches as its or their own product.

6. Defendant was incorporated on July 2, 1945, under the name of Continental Development & Engineering Company, and engaged in manufacturing and selling, among other things, small tools, principally for war purposes. Within a few months, defendant received a complaint from Con-

tinental Aviation & Engineering Company relative to the similarity of corporate names. Thereupon, defendant's officers decided to change to a non-conflicting corporate name, and, after considerable discussion among themselves relative to a name, decided upon the name "Ace." At about the same time, defendant was converting from wartime to peacetime work, and was seeking for special civilian tools which its plant was equipped to manufacture. This circumstance suggested to defendant's officers the addition of "Specialties" to the corporate name, resulting in their selection of the name "Ace Specialties Company." This decision was reached early in December, 1945. Preparations for substitution of this name in its business dealings were made, and the formal change of name was recorded on January 22, 1946.

7. In December, 1945, the head of a sales organization not here involved, suggested to defendant's officers that the manufacture and sale of a lock wrench would be profitable, a sample of which wrench he supplied to them. Defendant obtained an opinion from its patent counsel that no patent interfered with such manufacture and sale, and, thereupon, defendant made preparations to so manufacture and sell. About the middle of December, 1945, a sales agency agreement was made by defendant, as principal, with Edward Hodgins and Charles M. Kennan, as agents, whereby goods manufactured by defendant were to be sold for defendant by Hodgins and Kennan as agents of defendant on a commission basis.

8. On January 28, 1946, the plaintiff corporation was organized by Hodgins and Kennan under the name of A.C.E. Incorporated. Plaintiff is not a manufacturer or producer, but sells goods manufactured by others. The agency relationship with defendant was continued by Hodgins through plaintiff corporation, as agent, until terminated by defendant on April 5, 1946, when it appeared that Kennan was not actively engaged in selling and that plaintiff was attempting to construe the agency relationship as an independent relationship, whereby defendant manufactured for plaintiff goods to be purchased by plaintiff and sold by plaintiff as its goods. On the basis of this same contention, plaintiff here claims that defendant's application of the trade mark "Ace" to lock wrenches, starting in March, 1946, accrued to the benefit of plaintiff rather than defendant. Since termination of the agency relationship between defendant, as principal, and Kennan-Hodgins-plaintiff, as agents, defendant's sales have been handled through an agency with Bal-Dart Company, a corporation organized by the sales head who had originally proposed that defendant manufacture and sell lock wrenches.

9. Defendant did not manufacture lock wrenches for plaintiff. Lock wrenches manufactured by defendant and sold through plaintiff's offices were not given the benefit of plaintiff's name or business other than as sales agent for defendant. Lock wrenches manufactured by defendant did not pass through plaintff's hands except one gross of such wrenches, which plaintiff then shipped throughout the country in small numbers for sample purposes. Likewise, these were the only sales of lock wrenches manufactured by defendant on which plaintiff ever billed the customers directly. On all other sales of defendant's lock wrenches, defendant billed the customers directly and received payment directly from the customers, paying a commission on the sales to plaintiff, as sales agent.

10. On June 7, 1945, said Kennan purchased the entire capital stock of Ace Lubricating Equipment Company, Inc., among the assets of which were said registered trade mark No. 387,709 and Patent No. 2,294,673, issued September 1, 1942, to LoPrete, et al, on an Automatic Lubricator, together with tools, dies, jigs, machinery and office supplies necessary to manufacture and sell such Automatic Lubricator, plus an inventory of work in process of manufacture.

At some time prior to October, 1945, Hodgins, plaintiff's now President, entered into a loosely defined oral partnership or joint venture arrangement with Kennan, which expired in an equally informal and indefinite manner at an unspecified time prior to trial of this case.

At the time of Kennan's purchase of the capital stock of Ace Lubricating Equipment

Company on June 7, 1945, Kennan received a bill of sale of all the company's assets, running from the company to Kennan personally. On the same date, Kennan executed to Metro Engineering Company, of Detroit, an exclusive license to manufacture and sell Automatic Lubricators under the LoPrete Patent, for the life of the patent, coupled with a Bill of Sale of all physical assets necessary to manufacture the Automatic Lubricator covered by such patent, including the dies bearing the trade mark "Ace" enclosed within a diamond and an inventory of work in process of manufacture. At the same time, Kennan entered into an agreement to sell on commission, as agent for the licensee, the lubricators manufactured by the licensee. The Automatic Lubricator was manufactured with these dies, and sold as the licensee's goods, until about February 25, 1946, when the Metro license and sales agency agreement were cancelled by Kennan and the licensee, and a new license was executed by Kennan to Detroit Automatic Products Company. At this time, the latter company purchased from the Metro Company the tools, dies, jigs, fixtures and other machinery necessary to manufacture the Automatic Lubricator, including the dies bearing the trade mark "Ace" enclosed within a diamond. Simultaneously therewith a sales agency was arranged between this new licensee, as principal, and Kennan, as sales agent. The Automatic Lubricator was manufactured with these dies, and sold as this second licensee's goods, from that time until the license was cancelled on November 4, 1946, a month and a half after institution of the present action.

11. Plaintiff claims title to such registered trade mark, No. 387,709, on Automatic Self-Feeding Greasing Cups, by unrecorded assignments, the first of which was a Bill of Sale executed by the registrant, Ace Lubricating Equipment Company, Inc., to Kennan, on June 7, 1945, which was lost prior to trial. The second assignment is also a lost instrument, executed by Kennan to plaintiff corporation on January 2, 1946, naming as specifically transferred the office supplies, registered trade mark and good will of the business. A formal assignment to plaintiff, introduced as an exhibit, was executed by corporate action of Ace Lubricating Equipment Co. Inc., on November 2, 1946, assigning to plaintiff, "in accordance with previous verbal agreements * * * the entire right, title and interest in said Trade Mark 387,709, together with the good will of the business in connection with which the said Trade Mark is used."

12. From August 31, 1945, to July 2, 1946, and from August 31, 1946, to November 21, 1946, Ace Lubricating Equipment Company, Inc., was not in good standing under Section 87, Act 327, Public Acts of Michigan for 1931, for non-payment of franchise fees and failure to file corporate reports. On January 2, 1946, Kennan assigned to plaintiff the sales agency contract under which he was to sell Automatic Lubricators manufactured by Metro Engineering Company, together with office supplies of the Ace Lubricating Equipment Company, Inc. With knowledge of plaintiff, Kennan continued to deal with the Automatic Lubricator Patent and the machinery necessary to manufacture thereunder, including the dies bearing the trade mark "Ace" enclosed within a diamond, as his own property. During 1946, Kennan cancelled licenses and issued new licenses for the manufacture and sale of Automatic Lubricators under the patent, with dies bearing imprinted therein the trade mark "Ace" enclosed within a diamond. During the summer, he sold to a party not here involved, one-half of the stock of Ace Lubricating Equipment Company, Inc., and the corporation has been continued as a going concern, with Kennan as Secretary, and the new investor as President.

13. Neither Kennan nor Ace Lubricating Equipment Company, Inc., ever engaged in the business of producing lock wrenches, and, consequently, had no good will in such a business which could be assigned to plaintiff.

14. Lock wrenches are not merchandise of substantially the same descriptive properties as Automatic Self-Feeding Greasing Cups, on which such registration No. 387,-709 was issued.

15. The application by plaintiff to lock wrenches of the trade mark "Ace" enclosed within a diamond in June, 1946, when plaintiff knew that between the registration of

such mark on Automatic Self-Feeding Grease Cups in 1941 and June, 1946, defendant had applied that name to lock wrenches, was not a natural extension of the registered trade mark to other goods of the same descriptive properties.

16. As between the parties, defendant was the first to adopt and use in commerce the trade mark "Ace" as applied to lock wrenches.

17. Under the facts appearing in this record, the trade mark "Ace" enclosed within a diamond and applied to lock wrenches produced for and sold by plaintiff under the trade designation of "Ace Lock Wrench" since June, 1946, is confusingly similar to the trade mark consisting of an ace of spades enclosed within circles bearing the corporate name "Ace Specialties Company," applied to identical lock wrenches manufactured and sold by defendant under the trade designation of "Ace Lock Wrench," and such as to indicate that both of such lock wrenches emanate from the same source, so that purchasers are likely to be deceived and confused. This confusion results from a conscious and deliberate adoption and use by plaintiff of the trade mark "Ace", as applied to lock wrenches, after plaintiff knew of defendant's prior adoption and use thereof on lock wrenches. Plaintiff sells such lock wrenches in Michigan and throughout the entire United States in direct competition with defendant. Such conduct on the part of the plaintiff infringes defendant's rights in the common law trade mark "Ace" applied to lock wrenches and unfairly competes with defendant's business.

18. The claims advanced herein by plaintiff, to rights under the registered trade mark in question, are not clearly unsubstantial.

### Conclusions of Law

1. This court has jurisdiction of this action as one respecting alleged infringement of a registered trade mark, under 15 U.S.C.A. § 97.

2. Where, as here, plaintiff's allegation of rights under a registered trade mark are not plainly unsubstantial, this court has jurisdiction to determine, on substantially the same facts, the issue of unfair competition raised by both the complaint and the counterclaim, despite the fact that no diversity of citizenship exists. Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370; Federal Rules of Civil Procedure, Rule 13 (a), 28 U.S.C.A. following section 723 c.

3. Where it appears, as here, that lock wrenches are not merchandise of substantially the same descriptive properties as automatic self-feeding greasing cups, on which a trade mark registration has been issued, defendant does not infringe the registered mark by subsequent application of a similar mark to lock wrenches. Mason, Au & Hagenheimer Confectionery Co. v. Loose-Wiles Biscuit Co., D.C., 1 F.Supp. 755.

4. Where, as here, plaintiff applied a trade mark to lock wrenches when plaintiff knew that between that time and the time of prior registration of the same mark on automatic self-feeding greasing cups the defendant had applied a similar mark to lock wrenches, this was not a natural extension by plaintiff of the registered mark to other goods of the same descriptive properties. Gold Dust Corp. v. Hoffenberg, 2 Cir., 87 F.2d 451.

5. Where, as here, plaintiff sells, as agent, goods manufactured by defendant, bearing a trade mark affixed thereto, and the goods are not manufactured for plaintiff, nor do they pass through plaintiff's hands in the course of trade, nor does plaintiff give them the benefit of its name and business, the trade mark rights flowing from such use result to defendant and not to plaintiff. Prichard v. Consumers, 6 Cir., 136 F.2d 512.

6. Where, as between plaintiff and defendant, the defendant is the first to apply and use in commerce a distinctive mark on lock wrenches, defendant thereby acquires a common law trade mark, which is entitled to protection against plaintiff's use of a confusingly similar mark on lock wrenches. Liberty Oil Corp. v. Crowley Milner Co., 270 Mich. 187, 258 N.W. 241, 96 A.L.R. 645.

**7.** Where, as here, a mark applied by plaintiff to lock wrenches, sold under the trade designation of "Ace Lock Wrench," is confusingly similar to a mark previously applied by defendant to lock wrenches, also sold under the trade designation of "Ace Lock Wrench," and such as to indicate that both of such lock wrenches emanate from the same source, so that purchasers are likely to be deceived and confused, which confusion results from a conscious and deliberate adoption and use by plaintiff after plaintiff knew of defendant's prior adoption and use, and plaintiff sells such lock wrenches in commerce in direct competition with defendant, such conduct of plaintiff infringes defendant's common law trade mark rights and unfairly competes with defendant's business.

**8.** It therefore follows that the complaint herein must be dismissed upon the merits, and the defendant granted the relief prayed for in its counterclaim. Accordingly, judgment is being entered simultaneously herewith to that effect, restraining plaintiff, its officers, agents and employees, from making, using or selling a lock wrench bearing the trade mark "Ace" enclosed within a diamond or bearing an ace of spades, or any colorable imitation thereof, or from advertising or selling any lock wrench under the trade designation of "Ace Lock Wrench," and requiring plaintiff within thirty days from the date hereof to withdraw from the market any lock wrench bearing the mark "Ace" enclosed within a diamond or bearing an ace of spades, or any colorable imitation thereof, and requiring plaintiff, within ten days thereafter, to report upon its execution of this requirement and to surrender for disposal any lock wrench from which such mark has not been removed.

### Judgment for Defendant

In accordance with the foregoing findings of fact and conclusions of law,

It is Hereby Ordered and Adjudged that the plaintiff's complaint, complaining of infringement and unfair competition of the trade mark "Ace" as applied to lock wrenches, be, and the same is hereby dismissed on the merits.

It is Further Ordered and Adjudged that the plaintiff, its officers, agents and employees, be, and they are hereby permanently restrained and enjoined from making, using or selling a lock wrench bearing the trade mark "Ace" enclosed within a diamond or bearing an ace of spades, or any colorable imitation thereof, or from advertising or selling any lock wrench under the trade designation of "Ace Lock Wrench."

It is Further Ordered and Adjudged that within thirty days from the date hereof, the plaintiff shall withdraw from the market any lock wrench bearing the mark "Ace" enclosed within a diamond or bearing an ace of spades, or any colorable imitation thereof.

It is Further Ordered and Adjudged that, within ten days after expiration of such thirty-day period, the plaintiff shall report to this court upon its execution of the foregoing requirement, and shall also surrender for disposal any lock wrench from which such mark has not been removed.